**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LIBERTY LACANILAO HILADO,

     *Plaintiff*,

   v.

MEDSTAR GEORGETOWN MEDICAL
CENTER, INC.,

     *Defendant*.

Civil Action No. 24-00007 (AHA)

**<u>Memorandum Opinion And Order</u>**

Liberty Hilado sued MedStar Georgetown Medical Center in a 13-count complaint arising

from alleged race and age discrimination, hostile work environment, and retaliation. After MedStar

answered the amended complaint and engaged in discovery, Hilado accepted an offer of judgment

that Medstar made under Federal Rule of Civil Procedure 68, resolving all claims against MedStar,

and the court entered the judgment. The parties agree this court must now determine Hilado's

entitlement to attorney's fees and costs under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(b).

The court grants Hilado's motion for fees in part and denies it in part.

**I.      Discussion**

The parties agree that following MedStar's offer, Hilado's acceptance, and the court's entry

of judgment, the court has discretion to award Hilado reasonable attorney's fees. *See* 42 U.S.C.

§ 2000e-5(k) (stating that the court may "in its discretion" award "the prevailing party . . . a

reasonable attorney's fee"); 42 U.S.C. § 1988(b) (same). "The most useful starting point for

determining the amount of a reasonable fee is the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

*see also DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019) (explaining that the "basic formula" for reasonable attorney's fees is counsel's reasonable hourly rate times the number of hours reasonably expended on the litigation). The party seeking fees "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The "essential goal" is "rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).[1]

### A. The Court Adopts Hilado's Proposed Rates

The court first considers the reasonable hourly rates for counsel, which Hilado bears the burden of establishing through evidence of "billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Hilado attaches a declaration from counsel attesting that counsel Stephen C. Swift and Charity C. Swift have over 37 years and 14 years of experience, respectively, in litigating complex federal employment cases. ECF No. 22-8 at 2. Hilado also attaches a rate table, which appears to be the *Laffey* matrix adjusted based on the Legal Services Index ("LSI"). ECF No. 22-7; *see also Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015) (explaining that the LSI *Laffey* matrix uses the Legal Services Index of the Bureau of Labor Statistics to adjust hourly rates for inflation). Based on those submissions, Hilado proposes an hourly rate of $745 for Stephen Swift and $675 for Charity Swift, which are lower than those in the rate table. *See* ECF No. 22-6 at 7; ECF No. 22-7 at 3.

---

[1] The law also allows a multiplier for "exceptional results," to "compensate counsel for work of exceptional quality as to which the lodestar award is inadequate." *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 52–53 (D.C. Cir. 1987). There is no argument for a multiplier here.

MedStar does not challenge the reasonableness of the LSI *Laffey* matrix as applied to this case or offer any alternative table, data, or rates. MedStar argues that Hilado has not justified the proposed rates for two reasons. First, it challenges counsel's "billing practices" by criticizing the quality of their billing records, including lack of contemporaneity, vagueness, and block billing. ECF No. 26 at 16–17. However, while those arguments are relevant—and, indeed, considered below—in reducing counsel's award, the relevant consideration for determining reasonable rates is not the quality of counsel's billing records, but rather counsel's "usual billing rate." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993); *see Covington*, 57 F.3d at 1108 (describing an attorney's "billing practices" as "her custom of charging reduced rates"). Here, Hilado's counsel represent, and MedStar does not dispute, that they do not have standard billing practices because they represent plaintiffs "with little or no financial resources on contingency basis." ECF No. 27 at 12–13. In this context, Hilado is "entitled to an award based on the prevailing market rates." *Covington*, 57 F.3d at 1107 (explaining that attorneys "who either practice privately and for-profit but at reduced rates reflecting non-economic goals or who have no established billing practice" should be compensated based on prevailing market rates).

MedStar, second, argues that Hilado has not submitted adequate evidence of her counsel's skill, experience, and reputation, or of prevailing market rates in the community. ECF No. 26 at 17–18. As noted, however, Hilado has proffered a rate table, which sets forth rates based on market data and level of experience, and MedStar does not dispute the propriety of that rate table as applied to the relevant community nor offer any countervailing rates or evidence. Given that Hilado's proposed rates fall within the only evidence of market rates before the court, the court adopts them as reasonable hourly rates. *See Covington*, 57 F.3d at 1109 ("In order to demonstrate this third element, plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the

U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community.");

*Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (upholding rates

based on LSI *Laffey* matrix); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d

1319, 1326 (D.C. Cir. 1982) (observing that "[o]nce the fee applicant has provided support for the

requested rate, the burden falls on the [opposing party] to go forward with evidence that the rate

is erroneous" and "it must do so by equally specific countervailing evidence").

### B. The Court Excludes Time Spent On Hilado's Stricken Motion To Compel And Reduces Time Across The Board For Failure To Keep Contemporaneous Records

The court next considers "the number of hours reasonably expended on the litigation."

*Hensley*, 461 U.S. at 433. The movant's fee application "need not present the exact number of

minutes spent nor the precise activity to which each hour was devoted nor the specific attainments

of each attorney," but "must be sufficiently detailed to permit the District Court to make an

independent determination whether or not the hours claimed are justified." *Concerned Veterans*,

675 F.2d at 1327. "Where the documentation of hours is inadequate, the district court may reduce

the award accordingly." *Hensley*, 461 U.S. at 433.

Hilado seeks fees for each stage of her counsel's representation, from initial consultation

and representation in the administrative process, to preparation of the complaint and litigation

through discovery, to preparation of the fee application and reply. ECF No. 22-6 at 1–6; ECF No.

27 at 24. In support, Hilado attaches records of the time spent on relevant activities. ECF No. 22-

6. In total, she seeks fees relating to 517.5 hours for counsel's representation through the

administrative process and litigation, 40 hours for the preparation of her fee application, and an

unspecified number of hours for preparation of her reply in support of the fee application. ECF

No. 22-2 at 5, 31; ECF No. 22-6 at 6; ECF No. 27 at 24. MedStar argues these hours are not

reasonable for a variety of reasons, some of which are well taken.

4

MedStar first argues that the number of attorney hours "shocks the conscience" because of the "drastic disparity between settlement amount and fee request." ECF No. 26 at 1. This argument is unsound. Courts have recognized that an attorney's fee award "should not be reduced simply because a plaintiff recovered a low damage award." *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 526 (2d Cir. 1991); *see Thomas v. National Football League Players Ass'n*, 273 F.3d 1124, 1129 (D.C. Cir. 2011) ("That the fees awarded are, as the district court acknowledged, nearly five times the amount of plaintiff's recovery, does not make them excessive." (cleaned up)). To do so would "subvert the statute's goal of opening the court to all who have meritorious civil rights claims," not only those who suffer severe injuries. *Cowan*, 935 F.2d at 524; *see City of Riverside v. Rivera*, 477 U.S. 561, 577 (1986) ("Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so."). Indeed, attorney's fees provisions exist, at least in part, to create incentives for attorneys to represent people who might otherwise go without counsel and whose rights might otherwise go without vindication.

However, on close review of the parties' arguments and Hilado's records—while also recognizing that courts do not "conduct a minute evaluation of each phase or category of counsel's work," *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (citation omitted)—the court finds it appropriate to exclude the following time:

- The court excludes 36.5 hours spent preparing Hilado's motion to compel, which was stricken for failure to comply with the court's standing order. *See* Minute Order (Oct. 25, 2024); ECF No. 22-6 at 5; ECF No. 26 at 14; *Shaw v. District of Columbia*, 210 F. Supp. 3d 46, 51 (D.D.C. 2016) (recognizing that courts may reduce a fee award for hours billed that are "unnecessary to the litigation").

5

- The court reduces the 21.5 hours requested for tabulating the hours and costs expended in this case. *See* ECF No. 22-6 at 1. The record indicates that counsel did not maintain contemporaneous time records, which would have undoubtedly impacted the time required to compile the hours and costs expended. Because this time was attributable to counsel's poor recordkeeping, the court finds it was not time reasonably expended, and deducts 18.5 hours.

The court declines to exclude time required to prepare discovery that was not produced and depositions that did not happen. That MedStar made, and Hilado accepted, an offer of judgment after those events took place does not mean counsel's preparation was unreasonable—indeed, it was likely the diligent thing to do, and was thus "reasonably expended on the litigation." *Hensley*, 461 U.S. at 433 The court also declines to reduce time as duplicative simply because two attorneys conducted the recorded task. It is customary for multiple attorneys to work on a case, and the court concludes that the entries requesting hours for both attorneys are reasonable, with most entries stating that the attorneys reviewed and analyzed documents relevant to the litigation. *See* ECF No. 22-6 at 3–6. The court similarly declines to exclude time for administrative or clerical tasks. Hilado's counsel have explained that their firm consists of only two attorneys, with no clerical staff to handle administrative tasks. ECF No. 27 at 14. As courts in this district have recognized, asking "solo practitioners" or "small firms" to bill administrative tasks at a lower rate may "unfairly punish plaintiffs and their counsel for not staffing [the] case as if they had the manpower of a major law firm." *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 75 (D.D.C. 2011); *see also District of Columbia v. Jeppsen*, 686 F. Supp. 2d 37, 39 (D.D.C. 2010).

The court concludes that two further reductions are warranted. First, counsel's failure to maintain contemporaneous records warrants an across-the-board reduction. While courts should

exercise humility in performing an after-the-fact audit of the time needed to zealously represent and prevail for a client, that presumes accurate timekeeping. Therefore, "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Concerned Veterans*, 675 F.2d at 1327; *see also Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (explaining that "contemporaneous time charges should be filed with the motion for attorneys' fees as a matter of course"). Here, Hilado's counsel concede that at least some of their billing was not contemporaneous. *See* ECF No. 27 at 12. Moreover, although the court might not reduce hours based on block billing alone, here the lack of contemporaneous records likely also explains the grouping and somewhat vague descriptions of tasks that should generally be spread out over several different billing entries. *See, e.g.*, ECF No. 22-6 at 2 (entry for work on EEOC administrative proceedings from March 2022 to October 2023); *id.* (entry for preparing, reviewing and editing the complaint). The court believes counsel's after-the-fact records warrant an across-the-board reduction of 30% for all time before the fee application. *See Hensley*, 461 U.S. at 438 n.13 (explaining that the district court properly "reduced the hours of one attorney by thirty percent to account for his inexperience and failure to keep contemporaneous time records"); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (awarding fees "for only fifty percent of the attorney hours" requested due to "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").

The court, second, finds it necessary to reduce the fees sought for preparation of the fee application and reply in support of that application. To be sure, "hours reasonably devoted to litigating attorneys' fees are compensable." *Grano v. Barry*, 783 F.2d 1104, 1113–1114 (D.C. Cir. 1986). Indeed, it is important to allow fees to be recovered for reasonable time expended in

preparing and defending one's fee application. *See Am. Fed'n of Gov't Emps., AFL-CIO, Local 3882 v. Fed'l Lab. Rels. Auth.*, 994 F.2d 20, 22 (D.C. Cir. 1993) ("No matter what the purpose of an attorney's fee provision, however, the availability of 'fees for fees' is essential to carrying out Congress' goal in including the provision in the first place."). Here, however, Hilado moves for a fee award of $59,995, without supporting the request with adequate records of time spent by each attorney. *See* ECF No. 27 at 24. For its part, MedStar did not oppose Hilado's entitlement to fees related to her fee application, raising the issue only in a sur-reply. *See* ECF No. 26; ECF No. 33-2 at 2–3. Balancing the absence of documentation and MedStar's partial failure to contest the fees, the court reduces the fees related to Hilado's fee application and reply by 50%.

The court accordingly awards the following fee award for time reasonably expended in litigating this case to judgment:

|  | Reasonable Rate | Recoverable Hours | Fee Award With 30% Reduction |
|---|---|---|---|
| **Stephen C. Swift** | $745/hr | 112 | $58,408 |
| **Charity C. Swift** | $675/hr | 350.5 | $165,611.25 |

And the court further awards $29,997.50 for time spent litigating attorney's fees. The court awards Hilado $663 in costs, which MedStar does not oppose. ECF No. 22-2 at 32; ECF No. 26 at 5.

## II.    Conclusion

For these reasons, the court grants Hilado's motion for attorney's fees in part and denies it in part. The court awards Hilado a total of $254,016.75 in attorney's fees and $663 in costs.

_____

AMIR H. ALI
United States District Judge

Date:   March 5, 2026